IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

GARY WARREN HANCOCK, JR.,                )
                                         )
          Plaintiff,                     )
v.                                       )          Civil Action No. 1:18-00024
                                         )
BARBARA RICKARD, *et al.*,               )
                                         )
          Defendants.                    )

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 83), filed on March 7, 2019. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 86.) Plaintiff filed his Response in Opposition and Affidavit. (Document Nos. 89 and 90-1.) Having examined the record and considered the applicable law, the undersigned has concluded that the Defendants' above Motion should be granted in part and denied in part. Specifically, Defendants' Motion should be denied as to Plaintiff's FTCA claim as asserted in his Supplemental Complaint and granted as to all other claims.

## PROCEDURAL HISTORY

On January 8, 2018, Plaintiff filed his Application to Proceed Without Prepayment of Fees or Costs and a Complaint for alleged violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct.

1999, 24 L.Ed.2d 619 (1971).[1] (Document Nos. 1 and 2.) Plaintiff names the following as Defendants: (1) Barbara Rickard, Warden of FCI McDowell; (2) Officer Sawyers; (3) Librarian Norris; (4) Lieutenant Saunders; (5) Medic Walters; (6) Officer Nowlin; (7) Officer John Doe #1; (8) Officer John Doe #2; and (9) Officer John Doe #3. (Document No. 2.) Plaintiff alleges that on December 13, 2017, Plaintiff was taken to the Special Housing Unit ("SHU") following the issuance of an Incident Report concerning a verbal dispute between Plaintiff and a Correctional Officer. (Id., p. 3.) First, Plaintiff complains that he is being denied due process concerning disciplinary actions taken against him. (Id., p. 5.) Second, Plaintiff complains that the "totality of the conditions" of his placement in SHU results in cruel and unusual punishment in violation of his Eighth Amendment rights. (Id., pp. 1, 5 – 9, 16, 19 - 20.) Specifically, Plaintiff complains that for four days he was placed in a SHU "hard cell," which had a concrete bunk, was "filthy and extremely cold," and had no soap for proper hand washing. (Id., p. 23) Plaintiff further complains all cells in SHU are extremely cold and SHU inmates are not allowed to have their "sweat-suit to keep warm." (Id., p. 8.) Third, Plaintiff complains that he was denied breakfast on January 2, 2018, because he was served milk that was spoiled. (Id.) Plaintiff states that although he notified Officer Nowlin that his milk was spoiled and requested a new tray, Officer Nowlin never provided such. (Id., p. 9.) Fourth, Plaintiff complains that he is being denied appropriate medication to assist with the digestion of his food. (Id., pp. 9 – 13, 21.) Plaintiff states that he has been diagnosed with hypo-mobility of the digestive tract and severe abdominal distention. (Id.) Plaintiff alleges that he has been prescribed Metamucil, which is the "safest and most effective long-term treatment because it

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

is a natural food derivative/dietary supplement." (Id.) Plaintiff argues that the "fiber pills" he has been given as a replacement for Metamucil are less effective." (Id., pp. 12 – 13.) Fifth, Plaintiff argues that his First Amendment right to receive books, magazines, and newspapers has been violated during his placement in SHU. (Id., pp. 13 – 15.) As relief, Plaintiff requests declaratory judgment, injunctive relief, and monetary damages. (Id., pp. 26 – 35.)

By Order also entered on February 22, 2018, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to issue process. (Document No. 11.) The Clerk issued process on the same day. (Document No. 13.) On July 30, 2018, Plaintiff filed his "Motion for Leave to Supplement Complaint." (Document No. 49.) In his Motion, Plaintiff requested permission to amend his Complaint to include a claim that Defendant Walters gave Plaintiff incorrect medication while he was confined in the SHU at FCI McDowell. (Id.) Specifically, Plaintiff claims he was given Levitiracetam instead of LevoFloxacin. (Id.) Plaintiff further requests permission to name the Pharmacist as a "John Doe" defendant. (Id.) Plaintiff alleges that Pharmacist John Doe is responsible for filling the incorrect prescription. (Id.) As an Exhibit, Plaintiff files a copy of his "Proposed Supplemental/Amended Complaint." (Document No. 49-1.) By Order entered on August 31, 2018, the undersigned granted Plaintiff's "Motion for Leave to Supplement Complaint" and directed that Plaintiff's "Proposed Supplemental/Amended Complaint" be docketed as Plaintiff's "Supplemental/Amended Complaint." (Document No. 52.) Plaintiff's "Supplemental/Amended Complaint" was docketed the same day. (Document No. 53.)

In the "Supplemental/Amended Complaint," Plaintiff states that he ingested the incorrect medication for "one full week." (Id.) Plaintiff explains that he was incorrectly given Levitiracetam, instead of LevoFloxacin. (Id.) Plaintiff alleges that when Defendant Walters provided him with

3

the medication, he inquired as to "why the pill, which is usually cream-colored, was orange." (Id.) Plaintiff asserts that Defendant Walters reassured Plaintiff that it was the correct medication and that the orange color was normal. (Id.) Plaintiff states that LevoFloxacin is an anti-seizure medication, while Levitiracetam is an antibiotic. (Id.) Plaintiff states that he suffered the following adverse side effects from taking Levitiracetam: itching, light headedness, faint, pale stools, jaundiced, heart palpitations, stomach pain, headaches, and diarrhea. (Id.) Plaintiff alleges that Defendants' actions "amounts at least to medical negligence, and at most deliberate indifference." (Id.)

On March 7, 2019, the Defendants' filed their "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 83 and 84.) Defendants argue that Plaintiff's claim should be dismissed based on the following: (1) "Plaintiff failed to fully exhaust his administrative remedies" (Document No. 84, pp. 5 – 9.); (2) "The Supreme Court has not established a *Bivens* implied damages remedy under the First Amendment, which precludes Plaintiff's claims regarding the newspapers, books, and magazines in SHU" (Id., pp. 9 – 19.); (3) "Verbal comments or threats do not violate Plaintiff's constitutional rights" (Id., p. 19.); (4) "Plaintiff cannot establish an Eighth Amendment violation" (Id., pp. 19 – 25.); (5) "Conditions in SHU do not violate the Eighth Amendment" (Id., pp. 25 – 29.); (5) "Plaintiff's disciplinary action cannot be challenged in this case" (Id., pp. 29 – 31.); (6) "Plaintiff makes no specific allegations against Warden Rickard" (Id., pp. 31 – 32.); (7) "The Defendants are entitled to qualified immunity" (Id., pp. 32 – 34.); and (8) "Plaintiff has failed to exhaust the allegations in the Amended Complaint" (Id., pp. 34 – 35.).

As Exhibits, Defendants attach the following: (1) The Declaration of Tiffanie Little (Document No. 83-1, pp. 2 – 4.); (2) A copy of Plaintiff's "Public Information Inmate Data As of

12-18-2018" (Id., pp. 6 – 9.); (3) A copy of Plaintiff's "Administrative Remedy Generalized Retrieval" (Id., pp. 11 – 22.); (4) A copy of Plaintiff's "Inmate History Quarters" dated April 25, 2018 (Id., pp. 24 – 25.); (5) A copy of Administrative Remedy ID No. 911720 (Id., pp. 27 – 32.); (6) A copy of Remedy ID No. 924793-F1 (Id., pp. 34 – 44.); (7) A copy of Plaintiff's Inmate Discipline Data (Id., pp. 46 – 47.); (8) The Declaration of D. Pilant (Document No. 83-2.); (9) The Declaration of K. Lucas (Document No. 83-3, pp. 2 – 3.); (10) A copy of Plaintiff's pertinent medical and psychology records (Id., pp. 4 – 108.); (11) The Declaration of G. Walters (Document No. 83-4.); and (12) The Declaration of M. Sawyers (Document No. 83-5.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on March 8, 2019, advising him of the right to file a response to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgement." (Document No. 86.) On May 3, 2019, Plaintiff filed his Response in Opposition to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 89.) As an Exhibit, Plaintiff filed an Affidavit from Inmate Darrell Waynes. (Document No. 89-1.) On the same day, Plaintiff also filed a "Motion for Leave to File Supplemental Complaint." (Document No. 90.) As an Exhibit, Plaintiff attached a copy of his Proposed Supplemental Complaint. (Document No. 90-1.) On September 23, 2019, Plaintiff filed a "Motion to Withdraw Motion for Leave to File Supplemental Complaint." (Document No. 93.) Specifically, Plaintiff requests that the Court "disregard Plaintiff's request to supplement the Complaint dated 4/25/2019, and to use the sworn Proposed Supplemental Complaint as his Affidavit evidence." (Id.) By separate Order entered this day, the undersigned has granted Plaintiff's "Motion to Withdraw Motion for Leave to File Supplemental Complaint" and directed that is "Proposed Supplemental Complaint" be docketed as Plaintiff's Affidavit in Support of Complaint.

By Order entered on October 9, 2019, the undersigned directed Defendants to file Reply specifically addressing Plaintiff's Response that the administrative remedy process was unavailable during his placement in SHU, and file any supporting documentation. (Document No. 94.) Defendants filed their Reply on October 15, 2019. (Document No. 95.) As Exhibits, Defendants attach the following: (1) The Declaration of Howard Williams (Document No. 9501, p. 1 – 2.); (2) A copy of Program Statement 1330.18 regarding the Administrative Remedy Program (Id., pp. 4 - 20.); and (3) A copy of Plaintiff's Administrative Remedy Generalized Retrieval (Id., pp. 21 – 33.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a pro se Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992);

also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 -87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

### DISCUSSION

**1.     Bivens Claim:**

**A.     Failure to Exhaust:**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative

process may not afford them the relief they might obtain through civil proceedings.[2] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'") In Ross v. Blake, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) The administrative process "operates as a

---

[2] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) The administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) The "administrator thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." Ross, 136 S.Ct. at 1859-60; also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(overruled on other grounds), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the

federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005), *abrogated on other grounds by* Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921(Failure to exhaust is an affirmative defense that a defendant must generally plead and prove); also see Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." Custis v. Davis, 851 F.3d. 358, 361 (4th Cir. 2017); also see Banks v. Marquez, 694 Fed. Appx. 159 (4th Cir. 2017)(finding no error in the district court's decision to sua sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed to exhaust his administrative remedies).

For <u>Bivens</u> purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." <u>Dale v. Lappin</u>, 376 F.3d at 655 (internal citations omitted); <u>also see</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve her complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. <u>Id.</u> Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. <u>Id.</u>, § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. <u>Id.</u>, § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. <u>Id.</u>, § 542.15(a) and (b). If the Regional Director's response is

11

unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In their Motion, Defendants acknowledge that Plaintiff filed several administrative remedies but argue that Plaintiff failed to fully exhaust his administrative remedies concerning any of his claims asserted in the above action. (Document No. 84, pp. 5 – 9.) Although Plaintiff contends that the remedy process was unavailable during his placement in SHU, Defendants argue that the record refutes this claim. (Id.) Defendants explain that Plaintiff arrived at FCI McDowell on June 1, 2017, and remained in general population until December 13, 2017. (Id.) Defendants note that Plaintiff was placed in the SHU on December 13, 2017, and remained there until his transfer on April 4, 2018. (Id.) Defendants contends that Plaintiff *filed* four remedies during the time he was housed in SHU. (Id.) Importantly, Defendants acknowledge that it is possible Plaintiff's submitted three of the four requests prior to his placement in SHU. (Id.) Specifically, Defendants acknowledge that the administrative remedies filed on December 18, 2017, could have been submitted prior to his placement in SHU (Remedy ID No. 925149-R1, 925159-R1, 925151-

R1). (Id.) Defendants, however, stress that it is no doubt that the administrative remedy request received on February 9, 2018, was submitted during Plaintiff's placement in SHU (Remedy ID No. 911720-A2). (Id.) Thus, Defendants argue that administrative remedy process was available to Plaintiff and he should not be excused from exhausting his remedies. (Id.)

In support, Defendants submit the Declarations of Tiffanie Little, a Legal Assistant for the BOP, and D. Pilant, a Unit Manager at FCI McDowell. (Document No. 83-1, pp. 2 – 4 and Document No. 83-2.) Ms. Little declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Document No. 83-1, p. 2.) Specifically, Ms. Little states as follows in her Declaration:

> 11.  The first remedy he filed at FCI McDowell concerned a request for additional phone minutes and privileges. The remedy, Remedy ID No. 911720-F1, in which Plaintiff specifically requested that inmates have access to such items as televisions and video games in their cells, among other things, was closed and a response provided at the institution level on August 28, 2017.
>
> 12.  On October 2, 2017, Plaintiff appealed to the Regional Office level, Remedy ID no. 911720-R1, where the remedy was denied on October 16, 2017.
>
> 13.  On November 16, 2017, Plaintiff appealed to the Central Office level, Remedy ID No. 911720-A1, where the request was rejected on December 6, 2017.
>
> 14.  He resubmitted the appeal to the Central Office level on February 9, 2018, Remedy ID No. 911720-A2, where it was again rejected on February 14, 2018.
>
> 15.  Plaintiff filed an administrative remedy request, Remedy ID No. 924793-F1, at the institution level on November 22, 2017, requesting Metamucil. The remedy was closed and a response was provided on January 4, 2018. Plaintiff was advised that he could appeal to the Regional Director within 20 days.

16.     Plaintiff did not further pursue the remedy.

17.     Plaintiff filed other remedies regarding issues such as a disciplinary action (DHO) appeal, medical, and staff misconduct; however, all of these were rejected and never fully exhausted.

                                        * * *

20.     A review of Plaintiff's administrative remedy history shows that he filed four remedies during the time he was housed in SHU: Remedy ID No. 925149-R1 (DATE RCV: 12-18-2017); 925159-R1 (DATE RCV: 12-18-2017); 925151-R1 (DATE RCV: 12-18-2017); and 911720-A2 (DATE RCV: 2-9-2018).

(Id., pp. 3 - 4.) As Exhibits, Ms. Little attaches a copy of Plaintiff's Administrative Remedy History

and Administrative Remedy ID Nos. 911720 and 924793-F1. (Id., 11 – 22, 27 – 44.)

In his Declaration, Mr. Pilant states he was the Unit Manager for C-Unit, which Plaintiff

was assigned to while at FCI McDowell. (Document No. 83-2.) Mr. Pilant further declared as

follows:

4.     Unit Team staff make regular rounds in the Special Housing Unit weekly.

5.     During those rounds, we respond to concerns raised by inmates assigned to our Unit.

6.     I do not recall Plaintiff requesting administrative remedy forms or complaining that he was unable to get administrative remedy forms from his Counselor.

7.     Had he complained of such, I would have ensured that he received the appropriate forms.

8.     In addition to Unit Team staff, Plaintiff would have also seen other staff on a regular basis, including the Warden and Associate Wardens, to whom he could have also raised his concerns.

(Id.)

In his Response, Plaintiff continues to argue that the administrative remedy process was

14

unavailable during his placement in SHU. (Document No. 89, pp. 1 – 11.) Plaintiff swears under the penalty of perjury that he requested administrative remedy forms from staff members during the time he was placed in the SHU, but forms were never provided to Plaintiff. (Id.) Plaintiff contends that the administrative remedies filed on December 18, 2019, were submitted prior to his placement in SHU. (Id., p. 4.) Thus, Plaintiff argues that the foregoing does not support Defendants' claim that the administrative remedy process was available to Plaintiff during his placement in SHU. (Id.) As to the administrative remedy received on February 9, 2018, Plaintiff argues that he attempted file an appeal with the Central Office and such was rejected (Remedy ID No. 911720-A2). (Id.) Plaintiff states that the appeal was rejected because it was not filed on the proper form. (Id.) Plaintiff again explains that he was denied the appropriate form and he attempted to file on "plain paper." (Id., p. 8.) Concerning Mr. Pilant's Declaration, Plaintiff states that the only C-Unit Unit Team member that made consistent weekly rounds was a female Case Manager. (Id., p. 5.) Plaintiff states that he did not see "Unit Manager D. Pilant weekly until approximately [his] last month in the SHU. (Id., pp. 5 – 6.) Plaintiff states that on two separate occasions Plaintiff requested forms from Mr. Pilant, who instructed Plaintiff to request the forms from Unit Team Counselor Malone. (Id., p. 6.) Plaintiff alleges that he saw Counselor Malone on three occasions and each time requested administrative remedy forms. (Id.) Plaintiff states that each time Counselor Malone "said he would get them to me but never delivered." (Id.) Accordingly, Plaintiff argues that administrative remedies forms were unavailable during his placement in SHU. (Id.)

In their Reply, Defendants provide further clarification as to why Remedy ID No. 911720-A2 was rejected. (Document No. 95.) Defendants again argue that if Plaintiff would have requested administrative remedy forms from D. Pilant, D. Pilant would have ensured that Plaintiff received

the appropriate forms. (Id., p. 3.) Defendants further argue that Plaintiff did not name any of his

Unit Team members or his Counselor as defendants based on their failure to provide forms. (Id.)

Finally, Defendant notes that Plaintiff acknowledges that he "sent an extensive complaint titled

'Formal Complaint' to defendant/Warden Rickard detailing every adverse condition he could think

of within the institution." (Id.) Defendants, however, state that Plaintiff makes no mention of the

alleged denial of administrative remedy forms. (Id.)

   In support, Defendants submit the Declarations of Howard Williams, a Legal Assistant for

the BOP. (Document No. 95-1, pp. 2 – 3.) Mr. Williams declares that in his position he has access

to SENTRY, the Bureau of Prisons' online system containing, among other things, information

about inmates' administrative remedy filings. (Document No. 83-1, p. 2.) Specifically, Mr.

Williams states, in pertinent part, as follows in his Declaration (Id., p. 3.):

> 11.    A review of Plaintiff's administrative remedy history shows Admin. Rem.
> No. 911720-A2 was received by Central Office on February 9, 2018, and rejected
> on February 14, 2018. The rejection codes are FRM WRL OTH. FRM means, "You
> did not submit your request or appeal on the proper form (BP-9, BP-10, BP-11)."
> WRL means, "You submitted your request or appeal to the wrong level or wrong
> office." OTH means "Other." The rejection remarks provided: "BP-9 RESPONSE
> ISSUED ON 08-28-2017. SEE YOUR UNIT TEAM FOR ASSISTNACE IF
> NECECESSARY."

   Based upon a review of the record, the undersigned cannot find that the administrative

remedy process was available to Plaintiff during his placement in SHU, which began on December

18, 2019. The record contains conflicting affidavits filed on behalf of Plaintiff and Defendants.

(Document Nos. 83-2 and 89.) Unit Manager Pilant declares that he does not recall Plaintiff ever

requesting any administrative remedy forms, and if Plaintiff had requested forms, such would have

been provided to Plaintiff. (Document No. 83-2.) Plaintiff, however, states that he requested forms

from Unit Manager Pilant on two separate occasions, but Pilant instructed Plaintiff to request such

from Unit Team Counselor Malone. (Document No. 89, p. 6.) Plaintiff further states that he saw

Counselor Malone on three occasions and each time requested administrative remedy forms. (Id.)

Plaintiff states that each time Counselor Malone "said he would get them to me but never

delivered." (Id.) The record is further void of any clear indication that Plaintiff properly filed any

administrative remedy following his placement in SHU. To the extent, Defendants rely upon the

administrative remedies filed on December 18, 2017, as evidence that the administrative remedy

process was available to Plaintiff, Defendants acknowledge that the foregoing remedies could have

been submitted prior to his placement in SHU (Remedy ID No. 925149-R1, 925159-R1, 925151-

R1). (Document No. 84, p. 8, fn. 5.) In his sworn Response, Plaintiff states that these remedies

were filed prior to his placement in SHU. (Document No. 89, p. 4.) To the extent Defendants argue

that there is no doubt that the administrative remedy request received on February 9, 2018, was

submitted during Plaintiff's placement in SHU (Remedy ID No. 911720-A2), such does not

establish that the administrative remedy process was available to Plaintiff. Plaintiff acknowledges

that he submitted Remedy ID No. 911720-A2 during his placement in SHU. (Document No. 89,

pp. 8 – 9.) Plaintiff, however, states that Remedy ID No. 911720-A2 was denied because he had

to file the remedy on a plain sheet of papers due to the denial of proper forms. (Id.) The record

reveals that Remedy ID No. 911720-A2 was denied, in part, due to Plaintiff's failure to file the

remedy on the proper form. (Document No. 95-1, p. 3.) The fact that Plaintiff failed to name his

Counselor or any Unit Team members as a defendant in the above action based upon their failure

to provide forms, or complain to the Warden in his "Formal Complaint" that the administrative

process was unavailable, does not refute Plaintiff's claim that the administrative remedy process

was unavailable. Federal inmates have no constitutional right to participate in the BOP's

administrative grievance proceedings. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir.), cert. denied, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1994); also see Booker v. South Carolina Dept. of Corrections, 855 F.3d 533 (4th Cir. 2017)("*Adams* establishes a clear rule: inmates have no constitutional entitlement or due process interest in access to a grievance procedure."); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)("[T]he federal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure. When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.") Therefore, a BOP employee's refusal to provide administrative remedy forms thereby making the process unavailable, is not actionable under Bivens. Rather, the legal consequence of conduct which makes the administrative remedy process unavailable to inmates is that the door to federal Court is open to proceedings on the merits of their claims without requiring their exhaustion of administrative remedies. Since an inmate does not have a constitutional entitlement to or a due process interest in accessing a grievance procedure, Plaintiff's failure to name his Counselor or any Unit Team members as defendants based upon their failure to provide administrative remedies forms was appropriate. Based upon the foregoing, the undersigned cannot conclude that Plaintiff failed to exhaust his *available* administrative remedies. Accordingly, the undersigned respectfully recommends that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be denied based upon his failure to exhaust.

### B.    First Amendment Claim:

In his Complaint, Plaintiff argues that his First Amendment right to receive books,

magazines, and newspapers has been violated during his placement in SHU. (Document No. 2, pp. 13 – 15.) In their Motion, Defendants argue that <u>Bivens</u> liability has not been extended to First Amendment claims. (Document No. 84, pp. 9 – 19.) Defendants contend that Plaintiff's claim fails under <u>Ziglar v. Abbasi</u>. (<u>Id.</u>) Defendants note that the United States Supreme Court has only approved a <u>Bivens</u> cause of action in three cases – <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>. (<u>Id.</u>) Defendants argue that Plaintiff's claim differs in a meaningful way from the above cases. (<u>Id.</u>) Defendants concluded that since the Supreme Court has never recognized a <u>Bivens</u> remedy under the First Amendment and other avenues for relief and special factors counsel against creating a damages remedy, Plaintiff's claim fails as a matter of law. (<u>Id.</u>) In Response, Plaintiff merely states that Plaintiff has stated a viable First Amendment claim and no alternative remedy existed. (Document No. 89, p. 12.) Plaintiff explains that no alternative remedy existed because Plaintiff was denied access to the administrative remedy process. (<u>Id.</u>)

A <u>Bivens</u> action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. <u>See</u> <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). <u>Bivens</u> core premise is to deter individual officers' unconstitutional acts. <u>Correctional Services Corp v. Malesko</u>, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001)(declining to extend <u>Bivens</u> to confer a right of action for damages against private entities acting under the color of federal law). In <u>Bivens</u>, the Supreme Court first recognized that a victim of a Fourth Amendment violation by federal officers may bring suit for money damages against the officers in federal court. <u>Bivens</u>, 403 U.S. at 396, 91 S.Ct. 1999. In the years following the decision in <u>Bivens</u>, the Supreme Court recognized an implied damages remedy under the Due Process Clause of the Fifth Amendment,

Davis v. Passman, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and the Cruel and Unusual

Punishments Clause of the Eighth Amendment, Carlson v. Green, 446 U.S. 14, 100, S.Ct. 1468,

64 L.Ed.2d 15 (1980). Since Carlson, the Supreme Court has consistently refused to extend Bivens

liability to any new context or new category of defendants. See FDIC v. Meyer, 510 U.S. at 484-

86, 114 S.Ct. 996 (declined to extend Bivens to permit suit against a federal agency); Holly v.

Scott, 434 F.3d 287, 290 (4th Cir. 2006)(declining to extend Bivens to an Eighth Amendment claim

against employees of a privately operated prison); Lebron v. Rumsfeld, 670 F.3d 540 (4th Cir.

2012)(declining to extend Bivens in a military context). In Abbasi, the Supreme Court made clear

the very limited scope of Bivens actions and that "expanding the Bivens remedy is now a

disfavored judicial activity." Ziglar v. Abbasi, ___ U.S. ___, 137 S.Ct. 1843, 1857, 198 L.Ed.2d

290 (2017). If the asserted Bivens claim is not one of the three Bivens-type actions previously

recognized by the Supreme Court, closer scrutiny is required. Id.

     In Abbasi, the Supreme Court set out a framework for determining whether a claim presents

a "new Bivens context." Abbasi, 137 S.Ct. at 1860. As stated above, the Supreme Court has

recognized a Bivens remedy in only three cases: (1) A Fourth Amendment claim against federal

agents for violating the prohibition against unlawful searches and seizures when they handcuffed

a man in his home without a warrant; (2) A Fifth Amendment general discrimination claim against

a congressman for firing his female administrative assistant; and (3) An Eighth Amendment claim

brought by an inmate's estate against prison officials for failure to provide adequate medical care

for his asthma. Id. at 1854-55(citations omitted). The Abbasi Court explained that "[i]f the case is

different in a meaningful way from previous *Bivens* cases decided by this Court, then the context

is new." Id. at 1859. Although the Abbasi Court did not provide "an exhaustive list of differences

that are meaningful enough to make a given context a new one," the Court did provide the following "instructive" examples:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

Id. at 1859-60. In the instant case, Plaintiff alleges that his First Amendment right to receive books, magazines, and newspapers was violated during his placement in SHU. The mere fact that Plaintiff alleges a violation of a constitutional right does not conclusively establish that Bivens extends to Plaintiff's constitutional claim. Thus, the undersigned must first determine whether Plaintiff's retaliation claim presents "a new Bivens context."

The Supreme Court has "never held that *Bivens* extends to First Amendment claims." Reichle v. Howards, 566 U.S. 658, 132 S.Ct. 2088, n. 4, 182 L.Ed.2d 985 (2012)("We have never held that Bivens extends to First Amendment claims."); also see Correctional Services Corporation v. Malesko, 534 U.S. 61, 67-68, 22 S.Ct. 515, 519-20, 151 L.Ed.2d 456 (2001)(noting that "we declined to create a *Bivens* remedy against individual Government officials for a First Amendment violation arising in the context of federal employment"); Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)("we have not found an implied damages remedy under the Free Exercise Clause"); Leibelson v. Collins, 2017 WL 6614102, * 8 (S.D.W.Va. Dec. 27, 2017)(J. Berger)("[I]t is not clear that *Bivens* may be extended to First Amendment claims."). In Ashcroft v. Iqbal, the Supreme Court stressed that "we have declined to extend Bivens to a claim sounding in the First Amendment." Iqbal, 556 U.S. at 676, 129 S.Ct. at 1948. The Iqbal Court, however,

noted that it assumed without deciding that respondent's First Amendment claim was actionable under <u>Bivens</u> because petitioners did not assert the above argument. <u>Id.</u>; <u>also see</u> <u>Wood v. Moss</u>, ___ U.S. ___, 134 S.Ct. 2056, 2067, 188 L.Ed.2d 1039 (2014)("[W]e have several times assumed without deciding that *Bivens* extends to First Amendment claims. We do so again in this case."); <u>Reichle v. Howards</u>, 566 U.S. 658, 663, n. 4, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012)("We have never held that Bivens extends to First Amendment claims"). White v. Inch, 2018 WL 6584899, * 1 (S.D.Ill. Dec. 14, 2018)(finding that it is "quite clear that the Supreme Court has not yet 'officially recognized' a First Amendment *Bivens* claim."); <u>Clinton v. Brown</u>, 2015 WL 4941799 (W.D.N.C. Aug. 19, 2015)(finding that Plaintiff's allegation of a violation of his First Amendment right was an unrecognized claim under <u>Bivens</u>); <u>Heap v. Carter</u>, 2015 WL 3999077 (E.D.Va. July 1, 2015)(no implied cause of action for damages under <u>Bivens</u> for alleged violations of the First Amendment). Based upon the foregoing, the undersigned find that that Plaintiff's First Amendment claim presents a new <u>Bivens</u> context.

Next, the Court must determine whether <u>Bivens</u> should be extended to the above new context. First, the Court should consider "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new freestanding remedy in damages." <u>Wilkie</u>, 551 U.S. at 550, 127 S.Ct. 2588. "[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." <u>Abbasi</u>, 137 S.Ct. at 1865("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."); <u>Malesko</u>, 534 U.S. at 69, 122 S.Ct. at 515("So long as the plaintiff had an avenue for some redress," a court may decline to provide a new <u>Bivens</u> remedy). Alternative remedies can include administrative, statutory,

equitable, and state law remedies. Based upon the undersigned's above finding that the administrative remedy process was unavailable to Plaintiff during his placement in the SHU, the Court finds that the administrative remedy process does not constitute an alternative remedy in this case. The undersigned, however, finds that Plaintiff had other alternative remedies such as the following: (1) Filing a claim pursuant to 31 U.S.C. § 3723, which allows claims up to $1,000 to be presented to the agency for redress of damages caused by a federal officer's negligence; (2) Filing a claim pursuant to 31 U.S.C. § 3724, which allows the United States Attorney General to settle claims for losses to privately owned property caused Department of Justice employees that does not exceed $50,000; and (3) Filing a tort claim under State law. See Minneci v. Pollard, 565 U.S. 118, 127-30, 132 S.Ct. 617, 181 L.Ed.2d. 606 (2012); Borowski v. Baird, 2018 WL 6583976, * 2 (S.D.Ill. Dec. 14, 2018), aff'd, 772 Fed.Appx. 338 (7th Cir. 2019); White v. Sloop, 2018 WL 6977336, * 3 (S.D.Ill. Aug. 31, 2018). Finally, if an inmate is being subjected to an ongoing constitutional violation, he could seek injunctive relief. See 18 U.S.C § 3626(a)(2); also see Malesko, 534 U.S. at 74, 122 S.Ct. at 523(stating that "unlike the Bivens remedy, which we have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means' for preventing entities from acting unconstitutionally"); Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946)(recognizing the "jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution"). Thus, the undersigned finds that Plaintiff had alternative remedies available to address his allegations of a violation of his First Amendment rights.

Irrespective of whether an alternative remedy exists, a Bivens remedy should not be extended where "there are 'special factors counselling hesitation in the absence of affirmative

action by Congress.'" <u>Abbasi</u>, 137 S.Ct. at 1857(quoting <u>Carlson</u>, 446 U.S at 18, 100 S.Ct. 1468).

Although the Supreme Court has not defined what constitutes "special factors counselling

hesitation," the Court has observed that "[t]he necessary inference . . . is that the inquiry must

concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to

consider and weigh the costs and benefits of allowing a damages action to proceed." <u>Id.</u> at 1857-

58. Put simply, "a factor must cause a court to hesitate before answering that question in the

affirmative." <u>Id.</u> at 1858. "[L]egislative action suggesting that Congress does not want a damages

remedy is itself a factor counseling hesitation." <u>Id.</u> at 1865. The <u>Abassi</u> Court explained that since

Congress did not provide for a standalone damages remedy against federal jailers when it passed

the Prison Litigation Reform Act ["PLRA"], "[i]t could be argued that this suggest Congress chose

not to extend the *Carlson* damages remedy to cases involving other types of prisoner

mistreatment." <u>Id.</u> The Supreme Court explained as follows:

> Some 15 years after *Carlson* was decided, Congress passed the [PLRA] of 1995,
> which made comprehensive changes to the way prisoner abuse claims must be
> brought in federal court. *See* 42 U.S.C. § 1997e. So it seems clear that Congress
> had specific occasion to consider the matter of prisoner abuse and to consider the
> proper way to remedy those wrongs.

<u>Id.</u> The PLRA's exhaustion requirement clearly applies to <u>Bivens</u> actions. <u>Porter v. Nussle</u>, 534

U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The Supreme Court has further recognized

that in enacting the PLRA, Congress intended to "reduce the quantity and improve the quality of

prisoner suits." <u>Jones v. Bock</u>, 549 U.S. 199, 203-04, 127 S.Ct. 910, 1666 L.Ed.2d 798

(2007)(citing <u>Porter v. Nussle</u>, 534 U.S. at 524, 122 S.Ct. at 983). Additionally, the Supreme Court

has stated that "courts are ill equipped to deal with the increasingly urgent problems of prison

administration and reform." <u>Turner v. Safely</u>, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d

64 (1987)(citation omitted). The Supreme Court explained that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." Id. Since prison administration is a task that has been committed to the responsibility of the legislative and executive branches of government, the Supreme Court has stated that "separation of powers concerns counsel a policy of judicial restraint." Id., 482 U.S. at 85, 107 S.Ct. at 2259. Thus, the foregoing supports a finding that Congress has been active in creating legislation regarding prisoner litigation and such causes the undersigned hesitation as to expanding Bivens to Plaintiff's First Amendment retaliation claim. See Reid, 2018 WL 1588264 at * 3(finding Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new Bivens claim); Gehrke, 2018 WL 1334936 at * 4(same); Gonzalez, 269 F.Supp.3d at 61(same).

Furthermore, the Abbasi Court explained that "the decision to recognize a damage remedy requires an assessment of its impact on governmental operations systemwide." Abbasi, 137 U.S. at 1858. The impact on governmental operations systemwide include "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal systems are used to bring about the proper formulation and implementation of public policies." Id. The Supreme Court has emphasized that "'Congress is in a far better position than a court to evaluate the impact of a new species of litigation' against those who act on the public's behalf." Wilkie, 551 U.S. at 562, 127 S.Ct. 2588(quoting Bush, 462 U.S at 389, 103 S.Ct. 2404). In Abbasi, the Supreme Court further explained as follows:

25

> Claims against federal officials often create substantial costs, in the form of defense and indemnification. Congress, then, has a substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government. In addition, the time and administrative costs attendant upon intrusions resulting from the discovery and trial process are significant factors to be considered.

Abbasi, 137 U.S. at 1856. The undersigned notes that expanding Bivens to allow a First Amendment claim by inmates would clearly result in an increase of suits by inmates. This increase in suits would result in increased litigation costs to the Government and impose a burden upon individual employees to defend such claims. As stated above, Congress recognized the need of reducing costs related to frivolous lawsuits by prisoners when it enacted the PLRA. Thus, the costs of defending such litigation against the need for damages as a remedy to protect a prisoner's rights must be balanced if Bivens liability is extended to First Amendment claims. This is exactly the type of activity that the Supreme Court determined in Abbasi is better left to the legislative branch. Accordingly, the undersigned finds there are special factors counselling hesitation as to the expansion of Bivens to a First Amendment retaliation claim. See Kirtman v. Helbig, 2018 WL 3611344, * 5 (D.S.C. July 27, 2018)("Having conducted the 'special factors analysis,' the Court concludes that Plaintiff does have other avenues for relief, and there are significant economic and governmental concerns with recognizing an implied cause of action in this instance."), aff'd, 2019 WL 1513621 (4th Cir. April 8, 2019). Based upon the foregoing, the undersigned respectfully recommends that the District Court decline to expand Bivens to Plaintiff's First Amendment claim and that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" be granted as to Plaintiff's First Amendment claim. See Harris v. Dunbar, 2018 WL 3574736, * 3 (S.D.Ind. July 25, 2018)(collecting cases)("Nationwide, district courts seem to be in agreement that, post-Abbasi, prisoners have no right to bring a Bivens action for violation of the First

Amendment.")

**C.     Eighth Amendment:**

As a general matter, punishments prohibited under the Eighth Amendment include those that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, sentenced prisoners are entitled to reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 832-34, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994); Trop v. Dulles, 356 U.S. 86, 102, 78 S.Ct. 590, 598-99, 2 L.Ed.2d 630 (1958); Woodhous v. Commonwealth of Virginia, 487 F.2d 889, 890 (4th Cir. 1973). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) cert. denied, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate

must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991); also see King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993))("[T]o make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'"); Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)(explaining that the above requirements "spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called 'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'") To satisfy the objective component, Plaintiff must show that the challenged condition caused or constituted an extreme deprivation. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). To demonstrate an "extreme deprivation," a plaintiff "must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions." Odom v. South Caroline Dept. of Corrections, 349 F.3d 765, 770 (4th Cir. 2003); also see Wilson v. Seiter, 501 U.S. at 298, 111 S.Ct. at 2321(A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities."); White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In Strickler, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") To satisfy the subjective component, Plaintiff must demonstrate a "deliberate indifference" to his health and

safety by defendants. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware of the excessive risk to Plaintiff's health or safety and each Defendant disregarded that risk.

### (i)    *Verbal Abuse and Harassment.*

Plaintiff appears to contend that Defendant Norris violated his constitutional rights by verbally harassing him. (Document No. 2.) Specifically, Plaintiff alleges that Defendant Norris was "very disrespectful" during his communications with her while attempting to select a book from the library cart. (Id., pp. 14 – 15.) Plaintiff complains that Defendant Norris instructed him to "get your fu*king arm in the slot! Now!" (Id., p. 15.) Assuming Plaintiff's allegations as true, Plaintiff has failed to state a constitutional claim. First, Plaintiff fails to allege that he was incarcerated under conditions imposing a substantial risk of serious harm. Second, Plaintiff fails to allege facts sufficient to satisfy the subjective component of deliberate indifference. To satisfy the subjective component, Plaintiff must allege that each Defendant was consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff, however, fails to allege that each Defendant Norris knew of and disregarded an excessive risk to his health or safety. Furthermore, Plaintiff does not indicate that he suffered any serious injury as a result of Defendant Norris' alleged verbal abuse or harassment. The verbal harassment or abuse of an inmate by prison guards, without more, is insufficient to state a constitutional deprivation. Ivey v. Wilson, 832 F.2d 950, 954-55 (6th Cir. 1987); also see Lindsey v. O'Connor, 2009 WL 1316087, at * 1 (3rd Cir.

29

(Pa.))(holding that "[v]erbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment"); Purcell v. Coughlin, 790 F.2d 263, 265 (2nd Cir. 1986)(stating that name-calling does not rise to the level of a constitutional violation); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)(finding that a sheriff's threats to hang a prisoner were insufficient to state a constitutional deprivation). Based on the foregoing, the undersigned finds that Plaintiff has failed to state a cognizable claim under the Eighth Amendment for which relief can be granted.

(ii)    *Conditions of Confinement.*

Plaintiff contends that the conditions of his confinement was cruel and unusual based on the following: being confined in a "hard" cell that was "filthy" for four days; being denied hand soap for four days; being required to endure cold temperatures without a sweat suit while in SHU; and being denied breakfast on one occasion because his cereal was served with spoiled milk. (Document No. 2.) As stated above, prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish, 573 F.2d at 125. In Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991), the Supreme Court held that "some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets." Plaintiff's complaint of being confined in a "hard," dirty cell, without hand soap, for a four-day period is insufficient to state a constitutional violation. See also Hadley v. Peters, 70 F.3d 117 (7th Cir. 1995), cert. denied, 517 U.S. 1111, 116 S.Ct. 1333, 134 L.Ed.2d 484 (1996)("Prisons are not required to provide, and prisoner cannot expect, the services of a good hotel."). Next, Plaintiff complains of being denied

breakfast on one occasion. Being denied one meal on one occasion, however, does not establish that Plaintiff was denied adequate food in violation of the Eighth Amendment. See Lockamy v. Rodriguez, 402 Fed.Appx. 950, 951 (5th Cir. 2010)(absent an allegation of an injury as a result of missing meals, the deprivation of six meals during a 54 hour period was insufficient to state a claim); Evans v. Jabe, 2014 WL 202023, * 6 (E.D.Va. Jan. 17, 2014)(finding inmate failed to state a claim where he complained for an incomplete or tardy breakfast on six occasions and there was no evidence of an injury); Ajaj v. United States, 479 F.Supp.2d 501, 547-48 (D.S.C. March 19, 2007)(finding inmate failed to state an Eighth Amendment claim where he complained he did not have a mattress for a number of days).

Concerning Plaintiff's claim that he was subjected to cold temperatures in SHU and denied a sweat suit, the undersigned again finds that Plaintiff has failed to establish a constitutional violation. Plaintiff states that he was subjected to extremely cold temperatures for approximately two months (December 13, 2017, until mid-February). (Document No. 89, p. 28.) Plaintiff further claims that he was prevented from exercising during his placement in SHU because Plaintiff was not provided with adequate clothing. (Id., pp. 17 – 18.) The Declaration of D. Sawyers reveals that inmates in SHU were provided with "two blankets in additional to their issued clothing, and they have a jacket for outside recreation." (Document No. 83-5.) Defendants acknowledge that inmates in SHU are not issued sweat suits because SHU inmates are required to wear orange. (Document No. 83-5 and Document No. 84, pp. 27 – 28.) Although Plaintiff states that Mr. Sawyers' statement regarding jackets is misleading because inmates are not allowed to bring their jackets to their cells, Plaintiff does not dispute that jackets were provided for outside recreation. (Document No. 89, p. 27.) Furthermore, the undisputed record reveals that even though Plaintiff was not provided with

a sweat suit, Plaintiff was provided with other clothing and two blankets for use in his cell during his placement in SHU. The undersigned, therefore, finds that Plaintiff's above allegations do not constitute unconstitutional conditions of confinement. See Strickler, 989 F.2d at 1382(finding inmate failed to state a constitutional claim where "inmates received blankets when the jail became uncomfortably cold, and the jail was equipped with fans when the temperatures were hot"); McCray v. Burrell, 516 F.2d 347, 367-69 (4th Cir. 1975)(finding an Eighth Amendment violation where an inmate was solitarily confined for 46 hours in a cold cell with no clothing or blankets, no running water or personal hygiene items, and a toilet which consisted of a hole in the floor); Williams v. Ozmint, 2010 WL 3814287, * 6 – 7 (D.S.C. Sept. 23, 2010)(inmate's allegations that he was placed in a cell with only boxer shorts, sheets, and blankets as protection from the cold failed to establish an Eighth Amendment violation). The undersigned, therefore, finds that the undisputed record does not establish that Plaintiff was denied adequate clothing.

To the extent Plaintiff complains he was only provided with one change of pants per week, it is well recognized that the short-term denial of clean clothing and hygiene supplies does not rise to the level of an Eighth Amendment violation. See Beverati, 120 F.3d at 504-05, n. 5(finding a six-month deprivation of clean clothing, linen, or bedding did not violate the Eighth Amendment); Johnson v. Fields, 2017 WL 5505991, * 10 (W.D.N.C. Nov. 16, 2017)("Plaintiff's claim that he was denied a shower and clean clothes for twelve days is insufficient as a matter of law to maintain an Eighth Amendment claim."); DeLoach v. South Carolina Dept. of Corr., 2009 WL 1651452, * 3 – 4 (D.S.C. June 11, 2009), aff'd., 355 Fed.Appx. 681 (4th Cir. 2009)(denial of a clean jumpsuit and hygiene packet for a thirty day period did not constitute a denial of a 'basic need'); Walker v. Dart, 2010 WL 669448, * 4 (N.D.Ill. Feb. 19, 2010)("Being denied clean clothes for two weeks,

though unpleasant, is not a deprivation serious enough to support an Eighth Amendment claim)(collecting cases); Williams v. Anderson, 2006 WL 709209, * 13 (S.D.W.Va. March 16, 2006)(finding segregated inmate's inability to "exercise, keep personal hygiene items, change clothes or shower, take part in academic and religious programs or telephone family members" did not violate the Eighth Amendment).

Finally, the combined conditions of confinement complained of by Plaintiff amounts to nothing more than a "routine discomfort [that] is part of the penalty that criminal offenders pay for their offenses against society." Strickler, 989 F.2d at 1380. The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent . . . conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. 2392; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(citing Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990); also see Alberti v. Klevenhagen, 790 F.2d 1220, 1228 (5th Cir. 1986)(the Eighth Amendment does not require "the provision of every amenity needed to avoid mental, physical, and emotional deterioration") Based on the foregoing, the undersigned finds that Plaintiff has failed to state a claim under the Eighth Amendment for which relief can be granted.

### (iii)    *Deliberate Indifference Regarding Medical Care:*

In his Complaint, Plaintiff contends that Defendant Walters and medical staff acted with deliberate indifference in violation of the Eighth Amendment by failing to provide Plaintiff with appropriate medication to assist with the digestion of his food. (Document No. 2, pp. 9 – 13, 21.) Specifically, Plaintiff states that he has been diagnosed with hypo-mobility of the digestive tract

33

and severe abdominal distention. (Id.) Plaintiff alleges that he has been prescribed Metamucil, which is the "safest and most effective long-term treatment because it is a natural food derivative/dietary supplement." (Id.) Plaintiff argues that the "fiber pills" he has been given by medical staff as a replacement for Metamucil are less effective. (Id., pp. 12 – 13.) In his Supplemental Complaint, Plaintiff alleges that he ingested the incorrect medication for "one full week." (Document No. 53.) Plaintiff alleges that when Defendant Walters provided him with the medication, Plaintiff inquired as to "why the pill, which is usually cream-colored, was orange." (Id.) Plaintiff asserts that Defendant Walters reassured Plaintiff that it was the correct medication and that the orange color was normal. (Id.) Plaintiff states that Levitiracetam was an antibiotic and he suffered the following adverse side effects while taking the medication: itching, light headedness, faint, pale stools, jaundiced, heart palpitations, stomach pain, headaches, and diarrhea. (Id.) Plaintiff alleges that Defendants' actions "amounts at least to medical negligence, and at most deliberate indifference." (Id.)

In their Motion, Defendants argue that Plaintiff cannot establish an Eighth Amendment medical claim of deliberate indifference. (Document No. 84, pp. 20 – 25.) Defendants argue that even assuming Plaintiff's medical need was objectively serious, Plaintiff cannot satisfy either the objective or subjective components. (Id.) Defendants contend that Plaintiff was provided with timely and proper medical treatment. (Id.)

In Response, Plaintiff contends Metamucil has been prescribed to him on "various occasions by various doctors." (Document No. 89, p. 14.) Plaintiff states that "the long-term supplementation of dietary fiber has been deemed a necessity for me by doctors before my arrival in the FBOP." (Id., pp. 15 – 16.) Plaintiff claims that "although my medical records only show one

instance of my requesting Metamucil, I discussed it on several different occasions with various FCI McDowell medical staff; these encounters were not recorded in the Medical Computer System." (Id., p. 15.) Plaintiff further states that even though a PA wrote Plaintiff a commissary slip for fiber tablets, Plaintiff states that he was never allowed to order fiber tablets. (Id.) Therefore, Plaintiff alleges that during his "entire stay in SHU, medical staff refused to treat my condition." (Id.)

As stated above, Plaintiff must first allege and eventually establish an objectively "sufficiently serious" deprivation. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that Defendant Walters was aware that there was a substantial risk to Plaintiff's health or safety and that Defendant Walters disregarded the serious physical consequences.

Plaintiff alleges that Defendant Walters acted with deliberate indifference in failing to provide adequate medication for his digestive disorder and epilepsy. For purposes of an Eighth Amendment claim, a medical need is serious if it involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. Plaintiff alleges that his condition causes pain and suffering. Accordingly, the undersigned will assume for purposes of this motion that

Plaintiff's injuries were serious enough to give rise to an Eighth Amendment claim.[3]

Next, the undersigned will consider whether Defendant Walters acted with deliberate indifference to Plaintiff's health and safety under a subjective standard. To satisfy the subjective component, Plaintiff must allege Defendant Walters' consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff contends Defendant Walters acted with deliberate indifference in failing to provide him with appropriate fiber medication for slow digestion. Specifically, Plaintiff alleges that prior to incarceration, his doctor prescribed Metamucil as a fiber substitute. Plaintiff argues that Defendant Walters disregarded the prescription from Plaintiff's former, outside doctor. Plaintiff's medical records reveal that Plaintiff requested Metamucil while incarcerated at FCI Cumberland on May 9, 2016 (Document No. 83-3, pp. 99 – 100.) Although Plaintiff sought medical treatment for other medical issues, the record reveals that Plaintiff only complained to medical staff of digestive issues (constipation) on one occasion during his stay at FCI McDowell. Plaintiff arrived at FCI McDowell on June 1, 2017, and an intake medical exam was conducted by Registered Nurse ["RN"] Jackie Price and Plaintiff denied any current painful conditions. (Document No. 83-1, p. 3, pp. 28 - 33.) Plaintiff's Intra-System Transfer form from FCI Cumberland indicated constipation as a health problem, but noted that such was controlled with over the counter medication (Id., pp. 33 - 34.) On October 6, 2017, Plaintiff was examined by Dr. Howard Sathre and Defendant Walters at the Chronic Care Clinic. (Id., pp. 24 – 27.) Plaintiff stated he had been in prior Chronic Care due to his history of epilepsy. (Id.) Plaintiff advised that he no longer wished to take Levetiracetam and Sertaline, which he had stopped taking

---

[3] For purposes of their Motion, Defendants do not dispute that Plaintiff suffers from a serious medication. (Document No. 84, p. 20.)

36

more than a month ago. (Id.) Plaintiff stated that he last experienced a seizure three months ago, and the seizure was a mild twitching of the extremities lasting less than three seconds with no incontinency of bladder or bowels. (Id.) Plaintiff advised he had an allergy to Tegretal and Dilantin with a rash effect for both. (Id.) Plaintiff denied nausea, vomiting, fever, diarrhea, chest pain, shortness of breath, or lack of sleep. (Id.) Plaintiff failed to complain of any digestive issues. (Id.) Dr. Sathre examined Plaintiff and discussed the benefits versus side effects of taking Levetiracetam and Sertaline. (Id.) Dr. Sathre further counseled Plaintiff on access to medical care and discussed diet and exercise with Plaintiff. (Id.)

On October 31, 2017, Plaintiff reported to sick call complaining of having problems with his epilepsy. (Id., pp. 20 - 22.) Plaintiff, however, could not "explain the problems he states that he is having." (Id.) Plaintiff was evaluated by Physician Assistant ["PA"] Ashley Stark, who noted that Plaintiff had previously refused all medications and follow-up with the chronic care clinic. (Id.) Plaintiff further advised PA Stark that he should be transferred to FMC Butner, but PA Stark advised Plaintiff that the medical department could not designate an inmate's placement at a different facility. (Id.) PA Stark noted that she "[m]ade several attempts to explain policy and procedures to inmate about placement, [but] inmate is nonreceptive to any information." (Id.) PA Stark noted no abnormal findings and instructed Plaintiff to follow-up as needed. (Id.)

On September 20, 2017, Plaintiff filed an Informal Resolution Form complaining that Metamucil was not available for purchase from the commissary because it had been banned from this region. (Document No. 83-1, pp. 40 - 44.) Plaintiff explained that Metamucil had been prescribed to him in the past by an outside doctor and such was necessary as a fiber supplement for his "chronic digestive condition." (Id.) Plaintiff meet with R. Malone and his Unit Manager on

September 22, 2017, and an informal resolution was not accomplished. (Id.) R. Malone and the Unit Manager advised Plaintiff that Metamucil is not an approved over the counter medication, but he could purchase "sugar free veg. powder" from the commissary. (Id.) It was further noted that Plaintiff's commissary purchases for January 2017 were reviewed and Plaintiff made "an abundance of unhealthy purchases such as high sodium, fat, and sugary foods." (Id.)

On November 3, 2017, Plaintiff reported to sick call complaining of having "an upper respiratory infection for a year now. I know this because my cellie ate from my bowl three days ago and now he's sick." (Document No. 83-3, pp. 17 - 18.) Plaintiff stated that his symptoms were coughing up fluid after he eats and shortness of breath. (Id.) Plaintiff failed to complain of any digestive issues. (Id.) Plaintiff was evaluated by PA Chandra Carothers, who noted no fever, lungs were clear to auscultation, vesicular breath sounds bilaterally, and no crackles. (Id.) PA Carother's assessment was an unspecified disorder of nose and nasal sinuses. (Id.) PA Carother ordered a chest x-ray and instructed Plaintiff to "rest and stay hydrated." (Id.)

On November 9, 2017, Plaintiff filed a Request for Administrative Remedy with the Warden requesting that the commissary sell Metamucil to inmates. (Document No. 83-1, p. 34.) Plaintiff explained that "Metamucil is the only safe way to treat my condition" because the fiber pills at the commissary should only be used for a limited period of time. (Id.) Plaintiff stated that Metamucil could be used on a daily basis. (Id.)

On December 13, 2017, Plaintiff was evaluated by Defendant Walters on the day of his placement in SHU. (Document No. 83-3, pp. 10 - 13.) Defendant Walters examined Plaintiff noting no significant findings or apparent distress. (Id.) Plaintiff again failed to complain of any digestive issues. (Id.) Defendant Walters advised Plaintiff of SHU sick call protocol. (Id.)

On January 4, 2018, Warden Barbara Rickard filed her Response to Plaintiff's Request for Administrative Remedy. (Document No. 83-1, p. 35 - 38.) Warden Rickard denied Plaintiff's request after noting that Metamucil is not an approved item for purchase at the commissary. (Id.) Warden Rickard, however, provided Plaintiff with a copy of the BOP's Approved Over the Counter Medications as of May 26, 2015, with two substitute products for Metamucil highlighted. (Id.)

On January 12, 2018, Plaintiff was evaluated by PA William Goode. (Document No. 83-3, p. 60, 84, 87 – 89.) PA Goode ordered lab work and EKG. (Id.) It was noted that Plaintiff was to follow-up after results of the foregoing testing. (Id.) Plaintiff's EKG was performed on January 25, 2018. (Id., p. 76, 91-94.) On January 25, 2018, Plaintiff was also evaluated by Dr. Sathre and Defendant Walters at the Chronic Care Clinic. (Id., pp. 57 – 59, 97.) Plaintiff requested that he restart his prior seizure medication and noting occasional twitching of leg. (Id.) Plaintiff further stated that he had an history of depression and wanted to restart his prior prescription for Sertraline. (Id.) It was noted that Plaintiff denied suicidal or homicidal ideations or tendencies, nausea, vomiting, fever, or diarrhea. (Id.) As requested, Dr. Sathre prescribed Levetiracetam and Sertraline. (Id.) Plaintiff was instructed to follow-up as needed. (Id.)

On February 14, 2018, Plaintiff reported to sick call complaining of a history of constipation and stating he was jaundice. (Id., pp. 55 – 56.) Plaintiff noted that he had been taking over the counter fiber tablets, but he was still experience abdominal pain. (Id.) Plaintiff noted that Metamucil was a relieving factor. (Id.) Plaintiff was examined by PA Carothers, who noted that Plaintiff did not appear jaundice, has no history of hepatitis C, or abnormal liver enzymes. (Id.) PA Carothers assessed Plaintiff as suffering from constipation and wrote a commissary slip for

fiber tablets. (Id.) PA Carothers noted that the commissary slip was submitted to the Captain via email. (Id.) PA Carothers instructed Plaintiff to return immediately if his condition worsens. (Id.)

On March 7, 2018, Plaintiff was evaluated by Dr. Sathre and Defendant Walters at the Chronic Care Clinic. (Id., pp. 50 – 54, 95.) It was noted that Plaintiff was refusing to take his Levetiracetam and Sertraline. (Id.) Dr. Sathre noted that Plaintiff stated he was "not taking while in SHU" and Plaintiff would not explain farther. (Id.) Plaintiff denied any pain. (Id.) Dr. Sathre examined Plaintiff and noted that Plaintiff was noncompliant with his treatment plan. (Id.) Plaintiff was instructed to follow-up at sick call as needed. (Id.) On March 16, 2018, Plaintiff evaluated and provided dental treatment. (Id., pp. 81 – 82.)

Based upon the foregoing, Plaintiff cannot satisfy the subjective component. The foregoing does not exhibit that Defendant Walters, or medical staff, knew of and disregarded Plaintiff's need for Metamucil. Thus, the Court finds that Defendant Walters did not act with deliberate indifferent in providing medical treatment for Plaintiff's slow digestion. The medical records reveal that medical staff evaluated Plaintiff and provided treatment following each sick-call request and chronic care visit.[4] Defendant Walters, and FCI McDowell medical staff, consistently evaluated

---

[4] Plaintiff's attempt to dispute the medical records with a conclusory, self-serving statement that he reported complaints of his need for Metamucil to medical staff "on several different occasions" is insufficient because Plaintiff fails to provide specific factual details, such as date, time, and to whom the medical issue was reported. (Document No. 89, p. 15.) A plaintiff must offer more than bare allegations or conclusory statements to survive a motion for summary judgment. *See Silling v. Erwin*, 881 F.Supp. 236, 37 (S.D.W.Va. 1995); *also see Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)(citing *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001))(courts are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."); *Evans v. Technologies Applications & Service, Co.*, 80 F.3d 954, 692 (4th Cir. 1996)(Summary judgment affidavits cannot be conclusory or based on hearsay); *Moore v. United States*, 1987 WL 11280 (S.D.W.Va. March 23, 1987)(Unsupported affidavits setting forth "ultimate or conclusory facts and conclusions of law" are insufficient to either support or defeat a motion for summary judgment).

Plaintiff's conditions, ordered labs, prescribed medications, and provided a commissary slip for fiber pills. During his confinement at FCI McDowell, Plaintiff only complained to medical staff of digestive issues on one occasion, and the record clearly reveals that Plaintiff was provided with a commissary slip for fiber pills. There is no indication that Plaintiff complained to medical staff that the fiber pills were ineffective to treat his condition. Further, Plaintiff allegations reveal that his conclusion that fiber pills are insufficient is based upon his reference to the instructions on the packaging label for the fiber pills that allegedly states that such should only be used for seven days. Plaintiff, however, fails to acknowledge the instructions for the fiber pills advise to take as directed on the label, or as prescribed by your doctor. Plaintiff's medical records reveal that during Plaintiff's confinement at FCI Cumberland, Plaintiff made the same complaint and was advised by medical staff (a PA and a Pharmacist) that it was appropriate for Plaintiff to take fiber pills "as much as needed." (Document No. 83-3, p. 99.) Thus, Plaintiff's mere disagreement with the use of fiber pills verses Metamucil is insufficient to establish deliberate indifference. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). "[T]he Fourth Circuit has observed that an inmate's treatment may be limited to what is medically necessary as opposed to 'that which may be considered merely desirable' to the inmate." Malcomb v. Raja, 2010 WL 3812354, at * 1 - 2 (S.D.W.Va. Sept. 22, 2010)(quoting Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977)(finding that plaintiff was provided medication for his pain and "Defendants' decision to provide plaintiff with one medication over another does not give rise to a constitutional violation."). Furthermore, the record is void of any indication that Plaintiff was suffering from digestive issues and notified Defendant Walters, or medical staff at FCI McDowell, that the fiber pills were ineffective to treat his condition. The mere fact that Plaintiff had an outside doctor, who in the past instructed Plaintiff to

41

take Metamucil on a daily basis, does not establish that fiber pills are insufficient to treat his condition. Plaintiff's claim that his outside doctor's opinion concerning the appropriate medication to treat Plaintiff's digestive issue was better than the opinion of the BOP's medical staff does not state a constitutional violation. See Lewis v. Proctor, 2010 WL 148383, * 3 (N.D.W.Va. Jan. 12, 2010)(an inmate's belief that one doctor's treatment plan was better than another's does not state a constitutional violation); Oglesby v. Abbassi, 2013 WL 4759249, * 7, n. 12 (E.D.Va. Sep. 4, 2013)("certainly no claim is stated when a doctor disagrees with the professional judgment of another doctor"). Again, the record is void of any indication that Defendant Walters, or medical staff at FCI McDowell, were aware that fiber pills were ineffective to treat Plaintiff's digestive issue and failed to provide appropriate treatment.

Next, the undersigned will consider Plaintiff's claim that Defendant Walters and Pharmacist John Doe acted with deliberate indifference by providing Plaintiff with the incorrect medication for one week. Plaintiff states that Pharmacist John Doe and Defendant Walters provided him with Levitiracetam (an antibiotic), instead of his correct prescription for LevoFloxacin (an anti-seizure medication). Again, the undersigned finds that the record is completely void of any indication that Pharmacist John Doe or Defendant Walters knew that the incorrection medication was being provided to Plaintiff and disregard such. Plaintiff's mere statement that he inquired as to the color change of the medication, such does not establish that Defendant Walters knew the incorrection medication was being provided to Plaintiff. There is no allegation or indication that Plaintiff suffered symptoms of his seizure disorder during the one-week period that the incorrect medication was provided to Plaintiff. Furthermore, the record is void of any indication that Plaintiff suffered severe side-effects from taking the antibiotic and such

42

side-effects were disregarded by Defendant Walters or Pharmacist John Doe. At most, Defendant

Walters and Pharmacist John Doe may have been negligent in failing to provide the correct

medication. It is well recognized that "negligent medical diagnoses or treatment, without more, do

not constitute deliberate indifference." Webb v. Hamidullah, 281 Fed.Appx. 159, 166 (4th Cir.

2008); also see Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986)("[A] complaint that a

physician has been negligent in diagnosing or treating a medical condition does not state a valid

claim of medical mistreatment under the Eighth Amendment."). Accordingly, the undersigned

finds that Pharmacist John Doe and Defendant Walters did not act with deliberate indifference in

providing medical treatment for Plaintiff's condition.

      **D.**    **Challenge Concerning Plaintiff's Disciplinary Hearing:**

Plaintiff alleges that on December 13, 2017, Plaintiff was placed in SHU after the issuance

of an Incident Report concerning a verbal dispute between Plaintiff and a correctional officer.

(Document No. 2, p. 3.) Plaintiff contends that the Incident Report was issued out of retaliation

because he argued with the correctional officer. (Id.) Plaintiff appears to allege that his due process

rights were violated because Plaintiff did not have a hearing within the time frame set forth by

BOP policy. (Id., p. 5.)

In Response, Defendants argue that Plaintiff has not had the disciplinary action invalidated

about which he complains. (Document No. 84, p. 31.) Defendants note that Plaintiff received

Incident Report Number 3066461 on December 12, 2017, for threatening bodily harm in violation

Prohibited Act Code 203. (Id.) Defendants stated that Plaintiff had a hearing before the DHO on

February 28, 2018, and was sanctioned to 27 days loss of good conduct time, disciplinary

segregation, and loss of commissary. (Id.) Defendant states that foregoing disciplinary action has

not been overturned or expunged. (Id.) Plaintiff fails to address the foregoing in his Response. (Document No. 89.)

In Heck v. Humphrey, 512 U.S.477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) the Supreme Court established the following test to determine whether a prisoner's claim for violation of due process in the context of a criminal proceeding is cognizable under 42 U.S.C. § 1983.

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Heck, 512 U.S. at 487, 114 S.Ct. at 2372-73; see also Poston v. Shappert, 222 Fed.Appx. 301 (4th Cir. 2007)(applying Heck rationale to bar claims for damages under Section 1983 and Bivens); Messer v. Kelly, 129 F.3d 1259 (4th Cir. 1997)(stating that the rationale in Heck applies in Bivens actions).

The Supreme Court applied the Heck rule to prison disciplinary proceedings in Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), when it held that, in the context of prison disciplinary hearings that result in the loss of good-time credits, challenges to prison hearing procedures which necessarily imply the invalidity of the judgment must be pursued in habeas corpus, not in a Section 1983 action. In Balisok, the inmate alleged that he was denied the

44

opportunity to put on a defense due to the deceit and bias of the hearing officer. The Court held "that [Balisok's] claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decision maker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983." Edwards, 520 U.S. at 648, 117 S.Ct. at 1589. Accordingly, the undersigned proposes that the District Court find (1) that Plaintiff alleges that he was denied due process in connection with his prison disciplinary hearing, (2) that his contentions imply the invalidity of the disciplinary hearings and the review and appeal process, (3) that there has been no invalidation of the disciplinary hearing (See Document No. 83-1, pp. 46 – 47), and (4) that his claim is therefore barred.[5]

### E. Claim Against Defendants Richard and Saunders:

In his Complaint, Plaintiff appears to contend that Defendants Richard and Saunders violated his constitutional rights because each were aware of the "adverse" and/or unconstitutional conditions of confinement and failed to take corrective action. (Document No. 2, pp. 6 – 8, 24.) In their Motion, Defendants Rickard and Saunders argue that Plaintiff cannot establish a claim against them due to their lack of sufficient personal involvement. (Document No. 84, pp. 33 - 34.)

---

[5] The undersigned further notes that prisoner disciplinary proceedings are not part of criminal prosecution. Thus, the full panoply of rights due a defendant in criminal proceedings do not apply in prison disciplinary proceedings. See Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974)("there must be mutual accommodation between institutional needs and objective and the provisions of the Constitution"). Inmates, however, are entitled to the following procedural safeguards during disciplinary hearings: (1) advance written notice to the inmate of the claimed violation; (2) an opportunity for the inmate to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; and (3) a written statement by the fact finders of the evidence relied on and the reasons for the disciplinary action. Id., at 563 - 66. If Plaintiff believes he was denied any of the above procedural safeguards, Plaintiff should file an Application under 28 U.S.C. § 2241 for Writ of Habeas Corpus by a Person in State or Federal Custody.

Defendants Richard and Saunders argue that they were named as a defendant based upon their supervisory capacities as Warden and SHU Lieutenant. (Id.) In their Motion, Defendants Richard and Saunders contend that respondeat superior is not applicable as to Plaintiff's claim against them. (Id.) Defendants argue that Defendant Richard's involvement was limited to her administrative remedy response, which is not enough to sustain an action against her. (Id.)

In Response, Plaintiff argues that Defendants Richard and Sawyers must be responsible for their "acts of omission." (Document No. 89, pp. 32 – 33, 36 - 37.) Plaintiff states his complaints were made known to Defendants Richard and Sayers, but both failed to act. (Id.)

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Iqbal, 556 U.S. at 676, 129 S.Ct. at 1948("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Also see Monell v. Department of Social Services of the City of NY, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability, however, may attach to a supervisory official if "conduct directly causing the deprivation was done to effectuate an official policy or custom for which [the official] could be liable." Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by* County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Further, supervisory officials may be liable for acts of their subordinates where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative fact in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Thus, the inquiry for the Court is whether the Defendant individually "acted wantonly,

46

obdurately, or with deliberate indifference to the pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312, 1315 (4th Cir. 1991).

Defendants Richard and Saunders argue that Plaintiff has failed to demonstrate how each were personally involved in violating any of Plaintiff's constitutional rights. Essentially, Plaintiff alleges that Defendants Richard and Saunders violated his constitutional rights with respect to their failure to supervise employees and in responding to his administrative remedy. The evidence of record reveals that Defendant Richard did respond to administrative remedy requests filed by Plaintiff. (Document No. 83-1, pp. 35 - 38.) The dismissal of a Bivens defendant is appropriate, however, where the defendant's sole involvement is the denial of an administrative remedy request. See Wood v. Moss, _____ U.S. at _____, 134 S.Ct. at 2056(quoting Iqbal, 556 U.S. at 683, 129 S.Ct. 1937)("[I]ndividual government officials 'cannot be held liable' in a Bivens suit 'unless they themselves acted [unconstitutionally].'"); Fellove v. Heady, 2008 WL 196420 *4 (N.D.W.Va. Jan. 22, 2008)(stating that "to the extent that the plaintiff may be asserting that these defendants were deliberately indifferent to his needs by denying his administrative grievances, that claim is also without merit as this is not the type of personal involvement required to state Bivens claim"); Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003), aff'd, 70 Fed. Appx. 147 (4th Cir. 2003)(finding that the warden should be dismissed where the only claim against the warden concerned his dismissal of plaintiff's administrative remedy). Concerning Defendant Saunders, Plaintiff merely alleges that he notified Defendant Saunders of adverse and unconstitutional conditions and Defendant Saunders failed to act. Thus, the undersigned finds there is no evidence that Defendants Richard and Saunders were personally involved in the alleged violation of Plaintiff's constitutional rights, tacitly authorized staffs' alleged violation of Plaintiff's

constitutional rights, or acted with deliberate indifference to a pervasive risk of harm to Plaintiff. Furthermore, as explained in detail above, the undersigned has considered Plaintiff's claims of constitutional violations and found such to be without merit. Mere "adverse" conditions of confinement do not establish a constitutional violation. Accordingly, the Court finds that Defendants' "Motion to Dismiss, or in the Alternative Motion for Summary Judgment" should be granted. The undersigned finds it unnecessary to consider the other reasons that Defendants have submitted for dismissal of Plaintiff's <u>Bivens</u> claim.

**2.      FTCA Claim:**

In his Supplemental Complaint, Plaintiff alleges that Defendant Walters and Pharmacist John Doe provided him with the incorrect medication for "one full week." (Document No. 53.) Plaintiff explains that he was incorrectly given Levitiracetam, instead of LevoFloxacin. (<u>Id.</u>) Plaintiff alleges that when Defendant Walters provided him with the medication, he inquired as to "why the pill, which is usually cream-colored, was orange." (<u>Id.</u>) Plaintiff asserts that Defendant Walters reassured Plaintiff that it was the correct medication and that the orange color was normal. (<u>Id.</u>) Plaintiff states that LevoFloxacin is an anti-seizure medication, while Levitiracetam is an antibiotic. (<u>Id.</u>) Plaintiff states that he suffered the following adverse side effects for taking Levitiracetam: itching, light headedness, faint, pale stools, jaundiced, heart palpitations, stomach pain, headaches, and diarrhea. (<u>Id.</u>) Plaintiff alleges that Defendants' actions "amounts at least to medical negligence, and at most deliberate indifference." (<u>Id.</u>) Therefore, Plaintiff appears to assert a negligence claim under the FTCA against Defendant Walters. Such claims are appropriately raised against the United States under the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 2671-2680. An inmate "can sue under the FTCA to recover damages from the United States Government

48

for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA provides at Section 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely waives sovereign immunity and "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id.

As thoroughly explained in Section 1A above, the PLRA requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings. See Woodford, 548 U.S. at 81, 126 S.Ct. at 2382-83. The plain language of the statute, however, requires that only "available" administrative remedies be exhausted. Ross, 136 S.Ct. at 1855. The FTCA is a limited waiver of sovereign immunity. This waiver is subject to the condition that an administrative claim must first be submitted to the appropriate agency and denied before suit can be filed. See 28 U.S.C. § 2675(a).[6] See also Bellomy v. United States, 888 F. Supp. 760 (S.D.W.Va. 1995). As a general

---

[6]  Title 28 U.S.C. § 2675(a) provides as follows:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by

matter, filing a timely administrative claim is jurisdictional and cannot be waived. Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994) (citing Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986); Muth v. United States, 1 F.3d 246 (4th Cir. 1993); Gibbs v. United States, 34 F.Supp.2d 405 (S.D.W.Va. 1999). Thus, before an inmate can bring a claim under the FTCA, the inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.11 and 543.30 to 543.32. Additionally, the Court cannot hold the case in abeyance while a plaintiff presents an administrative tort claim with the appropriate agency.[7] See Plyer v. United States, 900 F.2d 41, 42 (4th Cir. 1990)("Since the district court has no jurisdiction at the time the action was filed, it could not obtain jurisdiction by simply not acting on the Motion to Dismiss until the period had expired."). 28 U.S.C. § 2401(b) provides that a tort claim must be presented to the appropriate federal agency within two years after the claim accrues and the lawsuit must be commenced within six months after the receipt of a final agency decision.

In their Motion, Defendants contend that Plaintiff never filed an administrative tort claim with the agency regarding the claim that he was provide an incorrect medication. (Document No.

---

certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

[7]  The administrative process which inmates must exhaust when they have complaints under the FTCA is spelled out at 28 C.F.R. §§ 14.1 - 14.11. To exhaust administrative remedies as required before filing an action under the FTCA, the inmate must first submit an administrative claim including a claim for money damages in a sum certain for the alleged injury sustained on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. Id., § 14.2(a) and (b)(1). After investigation and examination and informal attempts at resolving the inmate's claim as the circumstances may require, Id., §§ 14.6 and 14.8, the agency may deny or approve the inmate's claim. If the agency denies the inmate's claim, she may file suit in the District Court within six months of the mailing of the denial. Id., § 14.9(a). The Director of the Federal Bureau of Prisons is authorized to settle meritorious administrative Federal tort claims by providing monetary compensation. 28 C.F.R. §§ 0.96(k) and 0.172.

84, pp. 34 – 35.) In support, the Defendants assert the same arguments described above in Section 1A. (Id.) Similarly, Plaintiff again asserts that the administrative remedy process was unavailable following his placement in SHU. (Document 89, pp. 37 – 38.) For the same reasons analyzed om Section 1A above, the undersigned cannot conclude that Plaintiff failed to exhaust his *available* administrative remedies. Accordingly, it is respectfully recommended that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary" be denied as to Plaintiff's FTCA claim asserted in his Supplemental Complaint.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT in part and DENY in part** Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 83). Specifically, the undersigned recommends that Defendants' Motion be (1) **DENIED** as to Plaintiff's FTCA claim as asserted in the Supplemental Complaint; and (2) **GRANTED** as to all other claims.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo*

review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: October 25, 2019.

Omar J. Aboulhosn
United States Magistrate Judge