**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD**

**GARY WARREN HANCOCK, JR.,**

    **Plaintiff,**

**v.**                                **CIVIL ACTION NO. 1:18-00024**

**BARBARA RICKARD, et al.,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER**

By Standing Order, this action was referred to United States Magistrate Judge Omar J. Aboulhosn for submission of proposed findings and recommendation ("PF&R").  Magistrate Judge Aboulhosn submitted his proposed findings and recommendation on October 25, 2019.  In that Proposed Findings and Recommendation, the magistrate judge recommended that this court grant in part and deny in part defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment."  Specifically, Magistrate Judge Aboulhosn recommended that the motion be denied as to plaintiff's claim under the Federal Tort Claims Act ("FTCA") and granted in all other respects.

In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted fourteen days, plus three mailing days, in which to file any objections to Magistrate Judge Aboulhosn's Findings and Recommendation.  The failure of any party to file such objections constitutes a waiver of such party's right to a

de novo review by this court. <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Moreover, this court need not conduct a de novo review when a petitioner "makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." <u>Orpiano v. Johnson</u>, 687 F.2d 44, 47 (4th Cir. 1982). Plaintiff filed timely objections to the Proposed Findings and Recommendation on November 7, 2019 and defendant United States of America filed limited objections on November 5, 2019. The court has conducted a de novo review of the record as to those objections. <u>See</u> 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings and recommendations to which objection is made.").

## I. <u>Background</u>

On January 8, 2018, plaintiff filed this complaint for alleged violations of his constitutional and civil rights pursuant to <u>Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). Hancock raised the following claims:

1) That he was denied due process concerning the disciplinary actions taken against him;

2) That he was subjected to cruel and unusual punishment based upon the conditions he encountered in the Special Housing Unit ("SHU");

3) That he was denied breakfast on January 2, 2018;

2

4)    That he is being denied appropriate medication to assist with the digestion of food; and

5)    That his First Amendment rights were violated while placed in SHU.

In a supplemental complaint, Hancock alleges that he was given the wrong medication for a week and that defendants' actions in doing so "amounts at least to medical negligence, and at most deliberate indifference." ECF No. 53 at 4. Named as defendants are: (1) Barbara Rickard, the Warden of FCI McDowell; (2) Officer Sawyers; (3) Librarian Norris; (4) Lieutenant Saunders; (5) Medic Walters; (6) Officer Nowlin; (7) Officer John Doe #1; (8) Officer John Doe #2; (9) Officer John Doe #3; and (10) Pharmacist John Doe.

Defendants' Motion to Dismiss/Motion for Summary Judgment argued that plaintiff's claims should be dismissed for the following reasons:

(1)    Failure to Exhaust Administrative Remedies;

(2)    That the Supreme Court has not established a <u>Bivens</u> remedy for violation of the First Amendment;

(3)    Verbal comments and/or threats do not violate constitutional rights;

(4)    Hancock cannot establish an Eighth Amendment violation;

(5)    The conditions in SHU do not violate the Eighth Amendment;

(6)    Plaintiff's disciplinary action cannot be challenged in this case;

(7)    Plaintiff makes no specific allegations against Warden Rickard; and

3

(8)  Defendants are entitled to qualified immunity.

ECF No. 83 and 84.

As noted above, Magistrate Judge Aboulhosn recommended that plaintiff's FTCA claim be permitted to go forward.  In so doing, he denied defendants' motion to dismiss for failure to exhaust. As set forth more particularly in the PF&R, the magistrate judge further recommended that plaintiff's other claims be dismissed and/or judgment granted in defendants' favor.

## II.  Analysis

### A.  *Plaintiff's Objection 1*

Hancock objects that the PF&R mixes up the names of two medications.  This error does not affect the analysis in the PF&R.  However, plaintiff's objection is **SUSTAINED**.

### B.  *Plaintiff's Objection 2*

Hancock objects to the recommendation in the PF&R that his First Amendment claim be dismissed.  Hancock does not point to any error in the PF&R's analysis nor does he grapple at all with its ultimate conclusion that the Bivens remedy has not been expanded to include First Amendment claims.

As the PF&R noted, the Supreme Court's decision in Ziglar v. Abbasi, 137 S. Ct. 1843 (2017), governs the court's consideration of plaintiff's First Amendment claim.  Of Bivens' origins and its development, the Court summarized:

> In 1871, Congress passed a statute that was later codified at Rev. Stat. § 1979, 42 U.S.C. § 1983.  It

4

entitles an injured person to money damages if a state official violates his or her constitutional rights. Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up to <u>Bivens</u>, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government.

In 1971, and against this background, this Court decided <u>Bivens</u>. The Court held that, even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable searches and seizures. <u>See</u> 403 U.S. at 397, 91 S. Ct. 1999. The Court acknowledged that the Fourth Amendment does not provide for money damages "in so many words." <u>Id.</u> at 396, 91 S. Ct. 1999. The Court noted, however, that Congress had not foreclosed a damages remedy in "explicit" terms and that no "special factors" suggested that the Judiciary should "hesitat[e]" in the face of congressional silence. <u>Id.</u> at 396-397, 91 S. Ct. 1999. The Court, accordingly, held that it could authorize a remedy under general principles of federal jurisdiction. <u>See</u> <u>id.</u> at 392, 91 S. Ct. 1999 (citing <u>Bell v. Hood</u>, 327 U.S. 678, 684, 66 S. Ct. 773, 90 L. Ed. 939 (1946)).

In the decade that followed, the Court recognized what has come to be called an implied cause of action in two cases involving other constitutional violations. In <u>Davis v. Passman</u>, 442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed.2d 846 (1979), an administrative assistant sued a Congressman for firing her because she was a woman. The Court held that the Fifth Amendment Due Process Clause gave her a damages remedy for gender discrimination. <u>Id.</u> at 248-249, 99 S. Ct. 2264. And in <u>Carlson v. Green</u>, 446 U.S. 14, 100 S. Ct. 1468, 64 L. Ed.2d 15 (1980), a prisoner's estate sued federal jailers for failing to treat the prisoner's asthma. The Court held that the Eighth Amendment Cruel and Unusual Punishments Clause gave him a damages remedy for failure to provide adequate medical treatment. <u>See</u> <u>id.</u> at 19, 100 S. Ct. 1468. These three cases—<u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.

Id. at 1854-55. The Court went on to state that "expanding the Bivens remedy is now a disfavored judicial activity" and noted that it has "consistently refused to extend Bivens to any new context or new category of defendants . . . for the past 30 years." Id. at 1857 (internal quotations and citations omitted).

Of this reluctance to expand Bivens, the court went on to say that:

> When a party seeks to assert an implied cause of action under the Constitution itself, just as when a party seeks to assert an implied cause of action under a federal statute, separation-of-powers principles are or should be central to the analysis. The question is who should decide whether to provide for a damages remedy, Congress or the courts?
>
> The answer most often will be Congress. When an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them. In most instances, the Court's precedents now instruct, the Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability. As a result, the Court has urged caution before extending Bivens remedies into any new context. The Court's precedents now make clear that a Bivens remedy will not be available if there are special factors counselling hesitation in the absence of affirmative action by Congress.

Id. After considering the "special factors necessarily implicated by the detention policy claims" in that case, the Ziglar court concluded that the detainees' claims should not be the basis for a Bivens action. Id. at 1860 ("After considering the special factors necessarily implicated by the detention policy claims, the Court now holds that those factors show that

6

whether a damages action should be allowed is a decision for the Congress to make, not the courts.").

Magistrate Judge Aboulhosn analyzed Hancock's First Amendment claim under the Ziglar framework and recommended that the court decline to find an implied Bivens cause of action for that claim.  The court finds no error in the PF&R's disposition of this issue.  See Reichle v. Howard, 566 U.S. 658, 663 n.4 (2012) ("We have never held that Bivens extends to First Amendment claims."); Bush v. Lucas, 426 U.S. 367, 390 (1983) (declining to create an implied damages remedy in a First Amendment suit against a federal employer); see also Kirtman v. Helbig, Civil Action No. 4:16-cv-2839-AMQ, 2018 WL 3611344, *5 (D.S.C. July 27, 2018) (declining to find an implied Bivens cause of action for federal prisoner's First Amendment retaliation claim after conducting special factors analysis).  Hancock's objection is **OVERRULED**.

*C.   Plaintiff's Objection 3*

Hancock objects to the PF&R's conclusion that Hancock's claims against defendant Norris for verbal harassment did not amount to a constitutional violation.  According to him, Norris's "actions contributed to the totality of the unconstitutional conditions."  ECF No. 100 at 1.  "Generally, mere verbal harassment does not give rise to a constitutional violation." Belt v. Federal Bureau of Prisons, 336 F. Supp.3d 428, 437

7

(D.N.J. 2018); see also Clark v. United States, Civil No. 6:16-252-GFVT, 2018 WL 1950427, *2 (E.D. Ky. Apr. 25, 2018) ("[V]erbal harassment and insults, particularly on only one isolated occasion, are insufficient to state a claim of constitutional magnitude."); Snoussi v. Bivona, No. 05CV3133(RJD)(LB), 2008 WL 3992157, *7 (E.D.N.Y. Aug. 22, 2008) ("It is also clear that verbal harassment alone does not constitute a cognizable violation of an individual's constitutional rights."). As these cases and the numerous authorities cited therein confirm, Hancock's verbal abuse/harassment claim against defendant Norris does not amount to a violation of the Eighth Amendment.

Hancock, in apparent recognition of this truth, states that Norris's verbal abuse/harassment was just part of a claim based on the totality of his conditions of confinement. However, the Supreme Court has held that "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." Wilson v. Seiter, 501 U.S. 294, 305 (1991). The Court confirmed that "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell

temperature at night combined with a failure to issue blankets."
Id. at 304.

Hancock does not identify, nor can the court discern, a "single, identifiable human need" of which he was deprived due to Norris's alleged verbal harassment, either alone or in combination with his other complaints.  This objection is **OVERRULED.**

D.  *Plaintiff's Objection 4, 5, 6, and 7*

Hancock complained about a number of his conditions of confinement.  The PF&R concluded that these conditions, neither alone or in combination with each other, rose to the level of an Eighth Amendment violation.  Hancock objects to this finding.

1.  Sanitation

Hancock objected to the PF&R's conclusion that being confined in a hard, dirty cell without hand soap for a four-day period showed deliberate indifference on the part of defendants. The Fourth Circuit has previously held that denial of a shower on two separate occasions does not violate the Eighth Amendment. See Langston v. Fleming, 38 F.3d 1213, 1994 WL 560765, *1 (4th Cir. 1994); see also Davenport v. DeRobertis, 844 F.2d 1310, 1316-17 (7th Cir.) (one shower per week for inmates in administrative segregation does not violate Eighth Amendment), cert. denied, 488 U.S. 908 (1988); Davis v. Villers, Civil Action No. 5:12cv48, 2012 WL 7017863, *5 (N.D.W. Va. Oct. 9, 2012)

(temporary lack of toilet paper does not state a claim of constitutional magnitude); McCoy v. Meredith, C/A No. 4:10-1687-JFA-TER, 2011 WL 2223160, *2 (D.S.C. June 6, 2011) (denial of right to take shower on two occasions is not violation of Eighth Amendment); Shannon v. Graves, No. CIV.A.98-3395-KHV, 2000 WL 206315, *11 (D. Kan. Jan. 5, 2000) ("[C]ourts have noted that the failure to provide deodorant and shampoo is not cruel and unusual, because these items are not 'essential human needs.'").

   2.   Food

Although "[i]t is well established that inmates must be provided nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it[,] . . . one-time or intermittent mishaps with respect to food are not a constitutional violation." Miller v. Fogle, Civil Action No. 613-1670-TMC, 2013 WL 4499479, *2 (D.S.C. Aug. 19, 2013). Therefore, Hancock's claim that he received spoiled milk on one occasion likewise does not state an Eighth Amendment violation. See Perez v. Sullivan, 100 F. App'x 564, 567 (7th Cir. June 4, 2004)(no deliberate indifference to inmate's health based upon ingesting spoiled milk on one occasion); Miller, 2013 WL 4499479, at *2 (fact that prisoner was served spoiled milk on one occasion does not establish a constitutional violation); Shannon, 2000 WL 206315, at * 14 (fact that inmate is served spoiled food on

occasion and food with insect on one occasion insufficient for a jury to find cruel and unusual punishment).

   3.   Warmth

   As for Hancock's complaints regarding cold temperatures, his allegations do not establish that he was deprived of a basic human need.  He alleges that the temperatures in SHU were extremely cold at night but concedes that he was provided two blankets.  Likewise, with respect to his ability to exercise outdoors, he concedes that he was provided a coat even though he was not provided with sweats.  These conditions, standing alone or in concert with each other, do not establish that Hancock was deprived of the basic human need of warmth.  See, e.g., Strickler v. Waters, 989 F.2d 1375, 1382 (4th Cir. 1993) (no Eighth Amendment violation based upon cold temperatures where prisoner was provided with blankets); Carabello v. Ingram, No. 5:10-CT-3056-FL, 2012 WL 699518, *5 (E.D.N.C. Mar. 1, 2012) (no Eighth Amendment violation due to cold temperatures in cell where "inmates were permitted to wear socks on their arms to provide warmth . . . and were provided blankets and sheets").

   Based upon the foregoing, the court agrees with the PF&R that these conditions do not violate the Eighth Amendment.

   As for Hancock's claim that these conditions, taken together, violate the Eighth Amendment, he does not identify the single, identifiable human need that these conditions denied him.

Rather, his allegations touch on a number of different human needs, such as sanitation, food, and warmth. Therefore, these conditions do not have a "mutually enforcing effect". <u>See Saunders v. Sheriff of Brevard County</u>, 736 F. App'x 559, 571 (11th Cir. 2018) (holding that inmate's "broad swath of allegations", including overcrowding, deprivation of toiletries, inadequate cell cleaning, and failure to provide air conditioning "fail[ed] to illustrate the deprivation of . . . single identifiable human need. . . or . . . minimal civilized measures of life's necessities") (internal citations and quotations omitted); <u>Hood v. Evans</u>, No. 92-15549, 37 F. 3d 1505, *2-3 (7th Cir. Sept. 28, 1994) (holding inmate's allegations of overcrowded cells, inadequate and unsanitary shower facilities, lack of access to cleaning materials, inadequate heating, cooling, and ventilation, failure to provide clean clothing and bedding, inadequate opportunities for exercise, inadequate and poorly prepared food, confinement in a cell with drug addicts and mentally ill prisoners, and lack of access to current legal materials did not have a "mutually enforcing effect"); <u>Strickler v. Waters</u>, 989 F.2d 1375, 1382 (4th Cir. 1993) (inmate's complaints about overcrowding and excessive temperatures did not have "mutually enforcing effect").

Hancock's objections are **OVERRULED.**

*E.    Plaintiff's Objection 8, 9, and 10*

Under the Eighth Amendment, a prison official may violate a prisoner's right to medical care if the official is "deliberately indifferent" to a "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  In evaluating Hancock's claims regarding inadequate medical care, the PF&R assumed that his ailments were serious enough to give rise to an Eighth Amendment claim.  As for the subjective component, the PF&R found that the record did not show that defendants were aware of, but deliberately disregarded, that serious medical need.  In so finding, the PF&R provided a thorough summary of the medical evidence which the court finds unnecessary to repeat herein.  Suffice it to say, the evidence of record, which plaintiff has not rebutted in any meaningful way, demonstrates that defendants consulted with plaintiff on numerous occasions regarding his complaints and prescribed treatment options.  Just because Hancock did not agree with the suggested course of treatment does not mean that a violation of the Eighth Amendment has occurred.

Plaintiff's objections largely are directed at the various findings in the PF&R which are based upon the medical evidence of record.  Significantly, as the PF&R explained, "[p]laintiff's attempt to dispute the medical records with a conclusory, self-serving statement that he reported complaints of his need for Metamucil to medical staff 'on several different occasions' is

insufficient because Plaintiff fails to provide factual details, such as date, time, and to whom the medical issue was reported." ECF No. 98 at 40 n.4 (and authorities cited therein). Hancock's objections are **OVERRULED**.

## F.   *Plaintiff's Objection 11*

The PF&R concluded that plaintiff had not shown deliberate indifference on the part of the John Doe pharmacist for allegedly prescribing the wrong medication. In one sentence, Hancock states that he objects to this finding but he does not explain how the PF&R errs.

As the PF&R explained, there is simply no evidence to establish the John Doe pharmacist knew he had prescribed the wrong medication and continued to do so despite this knowledge. Therefore, plaintiff has failed to show that John Doe pharmacist knew of and disregarded an excessive risk to his health or safety. Plaintiff's allegations, even if true, are at best allegations of negligence. See Daniels v. Beasley, No. 241 F. App'x 219, 220 (5th Cir. 2007) (allegation that prison official gave prisoner wrong medication resulting in excessive sleep, loss of appetite, and temporary loss of vision did not establish "more than negligence"); Greene v. Watson, Case No. 3:15-cv-00621-MJR, 2015 WL 4609977, *2 (S.D. Ill. July 31, 2015) ("[A] bare allegation that an official gave a detainee the wrong medication suggests only negligent conduct by that official, and not the

14

kind of recklessness needed to put forth a constitutional claim."); <u>Cruz v. Archie</u>, CIVIL ACTION NO. 5:12cv86, 2013 WL 3544764, *7 (E.D. Tex. July 12, 2013) ("Cruz has failed to show Archie's actions in giving him the wrong pill amounted to anything more than negligence or lack of due care.").

G.   *Plaintiff's Objection 12*

Hancock's final objection is to the PF&R's conclusion that he has not stated a sufficient claim against defendants Saunders and Rickard because he has failed to show how they violated his constitution rights.  According to Hancock:

> In a prison setting, like the military, rank holds ultimate power.  After notifying the defendant's subordinates, Plaintiff notified the supervisory defendants of the constitutional violations.  In prison, the Warden is the Commander in Chief.  If the warden gives an order to subordinates, the order must be followed; and the Warden can make sure it is followed.  The same goes for defendant Saunders, he was the SHU supervisor and had the power to give orders that would correct the unconstitutional conditions. Once both supervisory defendants were notified of the unconstitutional conditions, it was their duty to do whatever necessary to correct them.

ECF No. 100 at 5.

The Fourth Circuit has explained:

> <u>Bivens</u> liability may not be based on respondeat superior.  <u>Jett v. Dallas Ind. School Dist.</u>, 57 U.S.L.W. 4858, 4867 (U.S. June 22, 1989) (No. 87-2084). This Court has held, however, that supervisory officials may be held liable in certain circumstances for constitutional injuries inflicted by their subordinates.  <u>Slakan v. Porter</u>, 737 F.2d 368, 372 (4th Cir. 1984), <u>cert. denied</u>, 470 U.S. 1035 (1985). Instead of respondeat superior, liability is premised "on a recognition that supervisory indifference or

15

tacit authorization of subordinates' misconduct may be
a causative factor in the constitutional injuries they
inflict on those committed to their care." Id. A
plaintiff must show "a pervasive and unreasonable risk
of harm from some specified source and that the
supervisor's corrective inaction amounts to deliberate
indifference or 'tacit authorization of the offensive
[practices].'" Id. at 373 (citations omitted).
Evidence of a supervisor's continued inaction in the
face of documented widespread abuses provides an
independent basis for finding he either was
deliberately indifferent or acquiesced in the
constitutionally offensive conduct of his subordinates.

Johnathan Lee X v. Casey, No. 90-6677, 924 F.2d 1052, *1 (4th

Cir. Feb. 4, 1991).

Hancock's objection to the PF&R is **OVERRULED** for four

reasons. First, as noted above, Hancock has not alleged or

proven an injury of constitutional magnitude against anyone.

Second, the record is devoid of the sort of documented widespread

abuses contemplated by Slakan. See Caldwell v. Green, 451 F.

Supp.2d 811, 821 (W.D. Va. 2006) ("Documentation of widespread

abuses are necessary to establish a sheriff's liability for

constitutional violations by a subordinate."). Third, despite

Hancock's attempt to characterize it otherwise, a careful reading

of plaintiff's objection is that his theory of liability against

Rickard and Saunders actually rests on respondeat superior

liability, which is not allowed under Bivens. See Ziglar v.

Abbasi, 137 S. Ct. 1843, 1860 (2017) ("Bivens is not designed to

hold officers responsible for acts of their subordinates.").

Finally, Hancock has failed to show an affirmative causal link

16

between the alleged inaction on the part of Rickard and Saunders and any constitutional injury he suffered.

H.    *Defendants' Objection:  Failure to Exhaust*

As noted above, Magistrate Judge Aboulhosn concluded that only plaintiff's FTCA claim survived defendants' motion.  With respect to Hancock's alleged failure to exhaust his administrative remedies, Magistrate Judge Aboulhosn could not find that Hancock failed to exhaust his available administrative remedies.  See ECF No. 98.  Specifically, based upon the conflicting evidence of record, the PF&R could not conclude that the administrative remedy process was available to Hancock while he was placed in SHU.  For that reason, the PF&R recommended that insofar as defendants sought dismissal based upon the failure to exhaust, their motion be denied.

The government objects to the PF&R's conclusion that Hancock was unable to file an administrative claim under the FTCA.  See ECF No. 99.  Pointing to the different requirements for exhaustion under the Prison Litigation Reform Act ("PLRA") and the FTCA, defendants argue that Magistrate Judge Aboulhosn "appear[ed] to conflate the administrative remedy process under the PLRA and the administrative claim process under the FTCA." Id. at 2.  According to defendants, even if Hancock's placement in SHU made it impossible for him to get the specific forms

necessary to exhaust his administrative remedies under the PLRA, he was still able to file an administrative claim under the FTCA.

As sovereign, the United States "can be sued only to the extent that it has waived its immunity" from suit. <u>United States v. Orleans</u>, 425 U.S. 807, 814 (1976); <u>see also</u> <u>Department of the Army v. Blue Fox, Inc.</u>, 525 U.S. 255, 260 (1999) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). Under the FTCA, the United States has waived its immunity and is liable for any "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The FTCA provides for government liability for "tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

In order to bring a tort claim against the United States under the Federal Tort Claims Act, a claimant must first file an administrative claim with the appropriate federal agency within two years of accrual of the claim. <u>See</u> 28 U.S.C. § 2401(b). 28 U.S.C. § 2401(b) specifies that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." Before bringing a claim in federal court,

"a claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." Id. at § 2675(a). The claim-filing requirement may not be waived. See Plyler v. United States, 900 F.2d 41, 42 (4th Cir. 1990); see also Garza-Ovalle v. Armstrong, Civil Action No. ELH-19-895, 2020 WL 230896. *12 (D. Md. Jan. 15, 2020) ("That the claim must be presented to the appropriate agency is 'jurisdictional and may not be waived.'") (quoting Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986)); Lamerique v. United States, Case No. 3:18-cv-00532, 2019 WL 2932673, *10 (S.D.W. Va. June 14, 2019) ("The requirement of filing an administrative complaint is jurisdictional and cannot be waived."); Baynes v. United States, 1:15-CV-1604 (LMB/TCB), 2016 WL 4492807, *8 (E.D. Va. Aug. 25, 2016) ("This jurisdictional requirement may not be waived.") (citing Kokotis v. U.S. Postal Serv., 223 F.3d 275, 278 (4th Cir. 2000)).

"Litigants must strictly comply with the requirements of the FTCA before this Court obtains jurisdiction to consider such claim." Brown v. United States, Civil Action No. 5:11CV63-DCB-RHW, 2012 WL 7655323, *1 (S.D. Miss. Dec. 19, 2012); see also Robinson v. United States, Civil Action No. 3:13-CV-1106, 2014 WL 2940454, *5 (M.D. Penn. June 30, 2014) ("Therefore, prior to commencing an FTCA action a plaintiff must comply with the

19

procedural prerequisites set forth by the FTCA.  Such procedural compliance is the price plaintiff must pay to take advantage of the limited waiver of sovereign immunity granted by the FTCA.").

There is no dispute that Hancock has not filed an administrative claim regarding his FTCA claim.  He claims he was unable to do so while he was in SHU.  Nevertheless, even when he was in SHU, he was able to institute this civil action on January 8, 2018, see ECF Nos. 1 and 2, and file documents that were received in this court on January 11, 2018, January 26, 2018, March 1, 2018, and March 8, 2018.  See ECF Nos. 5-9, 21-24, and 26.  Therefore, Hancock's actions in filing this lawsuit and pursuing it indicate that he was not unable to file an administrative claim while in SHU.  Furthermore, given that plaintiff was only in SHU from December 17, 2017 through April 4, 2018, he has failed to explain his failure to file an administrative claim since then and well within the two-year period.  Cf. Clark v. United States, Civil No. 6:16-252-GFVT, 2018 WL 1950427, *3 (E.D. Ky. Apr. 25, 2018) ("Clark complains that unidentified BOP officials violated his right of access to the courts by failing to give him a complaint form to file this action. . . .  This claim is without merit.  Even ignoring Clark's failure to identify a culpable defendant, the filing of this action demonstrates that Clark was not prevented from

asserting his claims."). Therefore, Hancock's FTCA cause of action is subject to dismissal for failure to exhaust.

Based upon the foregoing, defendants' objection is **SUSTAINED** to the extent it argues that exhaustion is mandatory and, therefore, plaintiff's FTCA claim is subject to dismissal.

### III. <u>Conclusion</u>

Having reviewed the Findings and Recommendation filed by Magistrate Judge Aboulhosn, the court hereby **OVERRULES** plaintiff's objections except for Objection 1 which was sustained. The court **SUSTAINS** defendants' objection on the issue of exhaustion of plaintiff's FTCA claim. With these exceptions, the court adopts the findings and recommendations contained in the PF&R. Accordingly, the court **GRANTS** defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment; **DISMISSES** this action; and directs the Clerk to remove this case from the court's active docket.

The Clerk is further directed to forward a copy of this Memorandum Opinion and Order to counsel of record and to plaintiff pro se.

IT IS SO ORDERED this 30th day of March, 2020.

ENTER:

David A. Faber
Senior United States District Judge